# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROGER WOODS, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-02495 |
| ERA MED LLC, ET AL., | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                 January 21, 2009

Roger Woods bring this diversity action against ERA Med LLC, John Hustwit, and

Seacor Holdings, Inc.[1] for breach of contract, breach of the implied covenant of good faith and

fair dealing, promissory estoppel, negligence, and deceit.  Presently before the court is

defendants' motion to dismiss Counts I-V of the complaint and to dismiss plaintiff's request for

punitive damages for failure to state a cause of action upon which relief may be granted pursuant

to Federal Rule of Civil Procedure 12(b)(6) and defendants' motion to strike plaintiff's request

for attorneys' fees pursuant to Federal Rule of Civil Procedure 12(f).[2]  For the reasons that

---

[1] Plaintiff also names "John Doe" individuals and "ABC" entities as defendants "for the express purpose of tolling the applicable statute of limitations."  (Compl. ¶ 30.)

[2] Defendants have not labeled this portion of their motion as a motion to strike.  The substance of the motion, however, tracks the language and remedy provided for in Federal Rule of Civil Procedure 12(f).  Thus, I construe defendants' motion with respect to plaintiffs' demand for attorneys' fees as a motion to strike under Rule 12(f).

follow, I will grant the motion to dismiss with respect to Counts II and IV, plaintiff's request for punitive damages in Counts I and III, and plaintiff's request for attorneys' fees. I will deny the balance of defendants' motion.

## I.   Background

Woods currently lives in the United Kingdom. This case arises from Woods's attempts to obtain an O-1 work visa, which is a type of skill-based visa reserved for individuals with "extraordinary" abilities. *See* 8 C.F.R. § 214.2(o). Taking the allegations in the complaint to be true, as I must in considering this motion to dismiss, the facts are as follows: Woods is a pilot who has accumulated "more than 24 years of relevant experience" and over "5,600 hours of flight time." (Compl. ¶ 4.) ERA Med LLC ("ERA") is engaged in the "helicopter transport industry." (*Id.* ¶ 1.) ERA employed John Hustwit[3] during the period of time relevant to this case as the principal executive in charge of filing applications and petitions with the United States Citizenship and Immigration Services ("USCIS"); Hustwit was responsible for Woods's O-1 visa petition. (*Id.* ¶ 2.) Seacor "is a holding company" that is "otherwise affiliated with ERA." (*Id.* ¶ 3.)

From March 2007 to September 2007, defendants attempted to hire Woods under the O-1 designation. (*Id.* ¶ 5.) During this time, Woods was in constant contact with both ERA and Hustwit concerning his potential employment. (*Id.*) In a letter dated April 23, 2007, ERA and Hustwit formally offered Woods a position as a helicopter line pilot. (*Id.* ¶ 6.) After receiving the offer, Woods completed an "FAA ATP" course and hired immigration counsel. (*Id.* ¶ 7.)

---

[3] In the caption, defendant Hustwit's name is spelled "Hustwitt." In the briefs and in his letter of April 23, 2007, this defendant's name was spelled "Hustwit." I will use "Hustwit" and assume that the spelling in the caption is a typographical error.

Despite "assurances to the contrary," ERA and Hustwit did not "cooperate and support" Woods's immigration efforts as they promised and agreed.  (*Id.* ¶ 8.)  Specifically, ERA and Hustwit failed to provide "critical information for the O-1 petition" and removed "critical statutory-based language" from ERA's testimonial letter, including language relevant to Woods's "extraordinary ability."  (*Id.*)  The defendants' failure to cooperate with Woods's immigration efforts continued through September 2007.  (*Id.* ¶ 9.)  Woods later learned that the O-1 petition was never filed and that ERA re-advertised the helicopter line pilot position.  (*Id.* ¶ 10.)  Defendants' actions caused Woods to forgo other, better-paying employment opportunities.  (*Id.* ¶ 11.)  Woods previously sought reimbursement for the costs associated with his FAA coursework and his O-1 petition, and three years of salary that Woods alleges he was promised.  (*Id.* ¶ 12.)

Woods filed his complaint on May 29, 2008, advancing five counts against the named defendants: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, (4) negligence, and (5) deceit.  In each count of the complaint, plaintiff demanded attorneys' fees and punitive damages.  On August 15, 2008, defendants filed this motion seeking to dismiss Counts I-V, to dismiss plaintiff's request for punitive damages and to strike plaintiff's request for attorneys' fees.  Plaintiff responded to defendants' motion on September 2, 2008, challenging the dismissal of Counts I, III, IV, and V, but conceding dismissal of Count II.  Defendants filed their reply on September 9, 2008.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.[4]  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When evaluating a motion

to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's

complaint, and must view any reasonable inferences that may be drawn therefrom in the light

most favorable to the plaintiff.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Id.* 1964-65 (citations and alterations omitted).  Furthermore, "[f]actual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 1965 (citations and

footnote omitted); *see also Phillips*, 515 F.3d at 232.

Finally, this case is before the court on diversity grounds, and the parties do not dispute

that the substantive law of Pennsylvania applies.  *Chin v. Chrysler LLC*, 538 F.3d 272, 278 (3d

Cir. 2008).

---

[4] In addition to the allegations contained in the complaint, "courts generally consider . . . exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

III.     **Discussion**

A.     **Woods's Eligibility for an O-1 Visa**

Defendants first argue that all five counts asserted against them in the complaint fail

because Woods was not eligible to obtain an O-1 visa.[5]  Woods contends that he was eligible to

_____

[5] An O-1 visa is type of temporary, nonimmigrant work visa that permits individuals with extraordinary abilities to legally enter and work in the United States.  *See* 8 U.S.C. § 1101(a)(15)(O)(i).  To obtain an O-1 visa, an alien must exhibit "extraordinary ability in the sciences, arts, education, business, or athletics" or demonstrate a "record of extraordinary achievement in the motion picture or television industry."  8 C.F.R. § 214.2(o)(1)(i).  To obtain an O-1 visa, "a petitioner [prospective employer] . . . shall file a petition on Form I-129."  *Id.* § 214.2(o)(2)(i).  The O-1 petition must present evidence of the alien's extraordinary ability.  *Id.* § 214.2(o)(3)(iii)(A)-(C).  This evidence must include either the receipt of a major award, such as the Nobel Prize, *id.* § 214.2(o)(3)(iii)(A), or at least three of the following:

> (1) Documentation of the alien's receipt of nationally or internationally recognized prizes or awards for excellence in the field of endeavor; (2) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields; (3) Published material in professional or major trade publications or major media about the alien, relating to the alien's work in the field for which classification is sought, which shall include the title, date, and author of such published material, and any necessary translation; (4) Evidence of the alien's participation on a panel, or individually, as a judge of the work of others in the same or in an allied field of specialization to that for which classification is sought; (5) Evidence of the alien's original scientific, scholarly, or business-related contributions of major significance in the field; (6) Evidence of the alien's authorship of scholarly articles in the field, in professional journals, or other major media; (7) Evidence that the alien has been employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation; (8) Evidence that the alien has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence[,]

*id.* § 214.2(o)(3)(iii)(B)(1)-(8).  However, if the criteria listed in § 214.2(o)(3)(iii)(A) and § 214.2(o)(3)(iii)(B) "do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence in order to establish the beneficiary's eligibility."  *Id.* § 214.2(o)(3)(iii)(C).  The petition itself "may only be filed by a United States employer, a United States agent, or a foreign employer through a United States agent."  *Id.* § 214.2(o)(2)(i); *see also id.* § 214.2(o)(2)(iv) (requiring each employer to file an O-1 petition if alien seeks entry to work

receive an O-1 visa and that defendants' support of his application would have satisfied the O-1 requirements.

Defendants' argument is without merit.  That Woods may not be eligible for an O-1 visa has no bearing on whether defendants entered into and breached a contract with plaintiff, or on whether defendants' statements and actions with respect to plaintiff were negligent or deceitful. If Woods can establish that defendants' actions satisfy the elements for the contract and tort claims raised in the complaint, then defendants are subject to liability absent an applicable defense.  Woods's eligibility for an O-1 visa may be relevant to other aspects of this case (e.g., excusing a breach of contract or refuting plaintiff's claim for damages), but his eligibility is irrelevant to this motion to dismiss, which tests only the sufficiency of plaintiff's complaint. Defendants may later be able to prove that Woods was not eligible for an O-1 visa, but that is a disputed fact that is not relevant at the motion to dismiss stage of the proceedings.  Accordingly, defendants' first argument fails.

**B.      Count I: Breach of Contract**

Defendants contend that plaintiff has failed to identify the existence of a contract, failed to set forth the essential terms of the purported contract, and failed to specify any consideration supporting the purported contract.  Plaintiff argues that defendants extended him a job offer, that he accepted the offer, and that defendants breached the terms of the offer by failing to file appropriate paperwork for plaintiff's O-1 application.  Under Pennsylvania law, to support a claim for breach of contract, a plaintiff must allege "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage."

_____

for multiple employers).

*Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 580 (Pa. Super. Ct. 2003); *see Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 888 (Pa. Super. Ct. 2006), *appeal denied*, 2008 WL 5062725 (Pa. Dec. 2, 2008).

To satisfy the first element a plaintiff must plead facts to demonstrate "an offer, acceptance, and consideration or mutual meeting of the minds." *Yarnell v. Almy*, 703 A.3d 535, 538 (Pa. Super. Ct. 1997) (citing Jenkins *v. County of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995)).  Woods alleges that defendants ERA and Hustwit offered him employment as a helicopter line pilot on April 23, 2007.  (Compl. ¶ 6.)  This averment  sufficiently demonstrates the existence of an offer.

Plaintiff has also pleaded facts sufficient to demonstrate his acceptance of defendants' offer.  In his complaint, Woods's does not aver with any specificity that he expressly accepted defendants' offer.[6]  An offer, however, "may be accepted *by conduct* and what the parties do pursuant to the offer is germane to show whether the offer is accepted." *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. Ct. 2001) (emphasis added); *see* Restatement (Second) Contracts § 50 cmt. c ("The promise [to accept an offer] may be made in words or other symbols of assent, or it may be implied from conduct, other than acts of performance, provided only that it is in a form invited or required by the offer."); *see also id.* § 19(1) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.").  "'Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the

_____

[6] In his response brief to this motion, Plaintiff asserts that he accepted defendants offer, but does so without discussion of or reference to the allegations contained in the complaint.  (*See* Pl.'s Mot. Opp'n Defs.' Mot. Dismiss 6.)

parties would be led to understand by such conduct under all of the surrounding circumstances.'"
*Mountain Props.*, 767 A.2d at 1101 (citing *Temple Univ. Hosp., Inc. v. Healthcare Mgmt.*
*Alternatives, Inc.*, 764 A.2d 587, 593 (quoting John Edward Murray, Jr., Murray on Contracts §
37, at 82 (3d ed. 1990))).  Defendants' offer does not restrict the method by which Woods could
have expressed his acceptance.  (*See* Pl.'s Mot. Opp'n Defs.' Mot. Dismiss Ex. A;) *see also*
Restatement (Second) Contracts § 30(2) ("Unless otherwise indicated by the language or the
circumstances, an offer invites acceptance in any manner and by any medium reasonable in the
circumstances.").  Thus, my inquiry focuses on whether Woods has pleaded conduct that
manifests his assent to defendants' offer.

Woods asserts that he enrolled in and completed an "FAA ATP" course and hired
immigration counsel in "detrimental reliance on the . . . written job offer."  (Compl. ¶ 7.)  Woods
also asserts that he was in "constant contact" with ERA and Hustwit about his employment from
March 2007 through September 2007.  (*Id.* ¶ 5.)  I find it reasonable to infer, for purposes of a
motion to dismiss, that Woods's actions objectively manifested his assent to defendants' offer
because Woods took the steps necessary to legally enter the United States and accept domestic
employment.  Moreover, because Woods asserts that he was in constant contact with both ERA
and Hustwit, I find it reasonable to infer for this purpose that defendants knew of Woods's
conduct, and that a reasonable person in defendants' position with such knowledge would have
understood Woods's conduct as accepting the offer.  Thus, drawing inferences in favor of
Woods, as I must, Woods has pleaded facts sufficient to demonstrate that he accepted
defendants' offer.

Finally, the employment contract is supported by consideration, as defendants promised

to employ plaintiff, and plaintiff promised (through his conduct discussed above) to work for defendants. *See York Metal Alloys Co. v. Cyclops Steel Co.*, 124 A. 752, 754 (Pa. 1924) ("There is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not."); *Co. Image Knitware, Ltd. v. Mothers Work Inc.*, 909 A.2d 324, 330 (Pa. Super. Ct. 2006) ("Consideration consists of a benefit to the promisor or a detriment to the promisee."). Woods has therefore pleaded facts that demonstrate the existence of an offer, acceptance and consideration. Accordingly, Woods has pleaded facts sufficient to establish the existence of a contract for the purposes of this motion.

I turn now to the essential terms of the contract. The April 23, 2007 offer letter sets forth several of the contractual terms.[7] The letter does not, however, include any language that requires defendants to cooperate and support Woods's application, which is the alleged term on which plaintiff rests his entire breach of contract claim. (Pl.'s Mot. Opp'n Defs.' Mot. Dismiss Ex. A.) Nevertheless, the offer letter instructs Woods to "contact [Hustwit] . . . for details." (*Id.*) This language suggests, and I find it reasonable to infer for the purposes of a motion to dismiss, that the offer letter did not include all of the terms of the employment agreement. The narrow question, therefore, is whether Woods's complaint demonstrates, either expressly or through reasonable inference, that the duty to cooperate and support is a "further detail."

Woods asserts that ERA and Hustwit promised him that defendants would cooperate and

---

[7] The offer letter includes information concerning Woods's base salary, medical benefits, insurance, 401K, and stock options. Though these terms are essential to the agreement, Woods's breach of contract claim rests solely on defendants' failure to cooperate and support his O-1 visa application. Accordingly, I focus on whether plaintiff has pleaded facts sufficient to demonstrate that the failure to cooperate and support is a term of the agreement.

support his O-1 visa petition.  (Compl. ¶ 8.)  This promise is consistent with the O-1 application process, whereby prospective employers must petition for aliens seeking to achieve O-1 status, as aliens cannot file petitions on their own behalf.[8]  *See* 8 C.F.R. § 214.2(o)(1)(i), 214.2(o)(2)(i)-(iii).  I find it reasonable to infer that this promise, which allegedly was made at some point during seven months of constant contact between plaintiff and defendants, is a term of the contract because without defendants' assistance, Woods could not obtain the O-1 visa that was necessary for defendants to lawfully employ him.  That other reasonable inferences exist (e.g., the promise was ancillary to and not a part of the contract), is irrelevant, as I must construe all reasonable inferences in favor of plaintiff for the purposes of this motion to dismiss.  Accordingly, Woods has pleaded facts to demonstrate the existence of a contract and its essential terms.[9]

---

[8] Woods implicitly acknowledges this principle in his complaint, alleging that *defendants* "sought Woods's employment under the O-1 designation."  (Compl. ¶ 5.)

[9] Moreover, even if the duty to cooperate and support plaintiff's O-1 visa petition was not a term of the contract, failure to provide cooperation and support (in the form of filing the O-1 petition) may constitute a breach of the implied duty of good faith.  *See Long v. Valley Forge Military Acad. Found.*, No. 05-4454, 2008 WL 5157508, *9 (E.D. Pa. Dec. 8, 2008) (noting that "[t]he principal that a covenant of good faith is implied in every contract is a well-established axiom of Pennsylvania law").  The "duty to perform contractual obligations in good faith does not evaporate merely because the contract is an employment contract."  *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000) (internal quotation omitted).

The implied duty of good faith is "tied specifically to and is not separate from the duties a contract imposes on the parties."  *Murphy v. Duquesne Univ.*, 777 A.2d 418, 434 (Pa. 2001).  The Pennsylvania Supreme Court in *Murphy* further explained the proper application of the duty of good faith, reasoning that the duty of good faith is "akin" to the doctrine of necessary implication, which the court described in the following passage:

> In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

Lastly, Woods alleges that defendants failed to perform their duty to support and cooperate with Woods's O-1 application and that, as a qualified candidate for an O-1 visa, he has suffered financial loss as a result.  (Compl. ¶¶ 4, 8-9, 14.)  These alleged facts are sufficient to support the breach of a contractual duty and resultant damages.  Therefore, plaintiff has pleaded facts sufficient to demonstrate all of the elements for his breach of contract claim, and I will deny defendants' motion to dismiss Count I of Woods's complaint accordingly.

C.      **Count III: Promissory Estoppel**

Pennsylvania law recognizes a cause of action for promissory estoppel.  *Cent. Storage & Transfer Co. v. Kaplan*, 410 A.2d 292, 294 (Pa. 1979); *see also Green v. Interstate United Mgmt. Servs. Corp.*, 748 F.2d 827, 830 (3d Cir. 1984).  The doctrine of promissory estoppel permits a plaintiff to enforce a promise in the absence of consideration.  *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717 (Pa. Super. Ct. 2005).  To maintain a claim for promissory estoppel, a plaintiff must plead facts to show that "1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise."  *Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)).  Defendants

---

*Id.*

Here, plaintiff avers that he accepted defendants' offer to hire him.  The legality of the envisioned employment relationship hinged on plaintiff attaining O-1 status.  Because only the employer can file the O-1 petition, defendants' failure to file the petition undermines defendants' ability to perform their express contractual duties to employ and pay plaintiff.  Accordingly, these alleged failures, taken as true for the purposes of this motion to dismiss, support a breach of contract claim premised on a breach of the implied duty of good faith as defendants' alleged failures are not divorced from or foreclosed upon by the express terms of the contract.

11

argue that Woods failed to identify a promise under which defendants were obligated to perform "specific actions" concerning plaintiff's O-1 visa application.  Defendants further argue that Woods's complaint relies on "vague reference to assurances" that are insufficient to support a claim for promissory estoppel.

To satisfy the first element of a promissory estoppel claim, plaintiff must plead facts to show the existence of an express promise made by defendants.  In meeting this burden, plaintiff cannot rely on a broad and vague implied promise.  *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988).   The averment in plaintiff's complaint that is most relevant to this discussion reads as follows:

> Despite assurances to the contrary, and despite receiving concurrence from Seacor to proceed, ERA and Hustwit failed to cooperate and support Woods' efforts, as previously agreed and promised, by among other things refusing to provide critical information for the O-1 petition, and by removing critical statutory-based language from ERA's testimonial letter including language requirements pertaining to "extraordinary ability."

(Compl. ¶ 8.)  The use of the word "assurances," albeit not precise, is broad enough for the purposes of this motion to allege that defendants "promised" cooperation and support.[10]  Even without a broad understanding of the word "assurances," plaintiff also uses the phrase "previously agreed and promised," which directly references defendants' alleged failure to "cooperate and support" Woods's O-1 petition.  Based on the use of the word "assurances" and the phrase "previously agreed and promised," plaintiff has sufficiently pleaded the existence of

---

[10] Webster's dictionary provides several definitions for the word "assure," including "to give confidence," "to make sure or certain," "to inform positively" and "to give a pledge or guarantee."  *See Webster's Third New Int'l Dictionary* 133 (1981).  I find that these definitions encompass the concept of a "promise," which is defined as "a declaration that one will do or refrain from doing something specified."  *Id.* at 1815.

an express promise.

In addition, the defendants' alleged promises are not vague or overly broad as defendants suggest.  Plaintiff alleges that Hustwit was the executive in charge of making the appropriate filings with the USCIS.  I find it reasonable to infer that because of Hustwit's position at ERA and his presumed familiarity with visa applications and USCIS compliance, Hustwit understood what was required of defendants to "cooperate and support" Woods's O-1 petition.  Even assuming the terms "cooperate" and "support" are too vague to define the defendants' obligations, plaintiff qualifies these terms later in the same averment.  Plaintiff alleges that defendants failed cooperate and support plaintiff "*by among other things*" failing to "provide critical information for the O-1 petition" and removing "critical statutory-based language from ERA's testimonial letter."  (*Id.* (emphasis added))  This language qualifies the phrase "cooperate and support" by adding substance and clarity to the defendants' alleged promises.  Accordingly, because plaintiff bases his promissory estoppel claim on defendants' express promise to provide specific support and cooperation to plaintiff's O-1 visa application, plaintiff's complaint satisfies the first element of his promissory estoppel claim.

Defendants do not contest the sufficiency of Woods's complaint with respect to the remaining elements of his promissory estoppel claim.  Even if contested, plaintiff has pleaded facts sufficient to fulfill the remaining elements of a promissory estoppel claim.  Plaintiff alleges that, as an alien qualified for an O-1 visa, he detrimentally relied on defendants' assurances by completing an "FAA ATP" course, hiring immigration counsel, (*id.* ¶¶ 4, 7, 20), rejecting other employment opportunities, and ending his search for other prospective employers, (*id.* ¶¶ 11, 20).  Plaintiff asserts that he incurred financial losses from out of pocket expenditures and forgone

income.  (*Id.* ¶ 20.)  Through these averments, plaintiff sufficiently alleges that he took action in

reliance on the defendants' promise, that he incurred detriment as a result of his reliance, and that

enforcement of the promise is necessary to avoid injustice.

Because plaintiff has pleaded facts sufficient to establish all elements of a promissory

estoppel claim, I will deny defendants' motion to dismiss Count III of plaintiff's complaint.

### D.       Counts IV and V: Negligence and Deceit

In Count IV, plaintiff advances a negligence claim, and in Count V, plaintiff advances a

deceit claim.  Defendants contend that both counts are barred by the "gist of the action" doctrine

and the economic loss doctrine.  In his response, plaintiff asserts that because defendants have

yet to admit the existence of a contract, the court would be premature in dismissing Counts IV

and V under either the economic loss doctrine or the gist of the action doctrine.

Pennsylvania courts apply the gist of the action and economic loss doctrines "to

determine whether tort claims that accompany contract claims should be allowed as freestanding

causes of action or rejected as illegitimate attempts to procure additional damages for a breach of

contract."  *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103 (3d Cir. 2001).

The gist of the action doctrine "is designed to maintain the conceptual distinction between breach

of contract claims and tort claims."  *Etoll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa.

Super. Ct. 2002) (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).[11]  The

-----

[11] The Pennsylvania Supreme Court has never adopted the gist of action doctrine.  *See Air Prods. & Chems. v. Eaton Metal Prods.*, 256 F. Supp. 2d 329, 340 (E.D. Pa. 2003) However, the Pennsylvania Superior Court has consistently applied the doctrine and many district courts have done the same.  *See id.* at 340 (citing *Etoll*, 811 A.2d at 14, and *Bash*, 601 A.2d at 829).  I agree with and join these courts in predicting that if presented with the opportunity to adopt the gist of the action doctrine, the Pennsylvania Supreme Court would adopt it.  Plaintiff apparently concedes this point, as plaintiff challenges only the application of the gist of the action doctrine

14

"critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486-87 (Pa. Super. Ct. 2007) (quoting *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005)).  To retain this conceptual distinction, the gist of the action doctrine prevents tort claims "1) arising between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Id.* at 486.  Importantly, the gist of the action doctrine will not bar tort claims that are collateral to the performance of the contract.  *Sullivan*, 873 A.2d at 719; *see also Etoll*, 811 A.2d at 17-20 (analyzing state and federal cases, and finding support for applying gist of the action doctrine to claims for fraud in the performance, but not fraud in the inducement).

Similar to the gist of the action doctrine, the economic loss doctrine assists in maintaining the distinction between tort and contract actions.  *See Air Prods. & Chems. v. Eaton Metal Prods.*, 256 F. Supp. 2d 329, 335 (E.D. Pa. 2003) (citing *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925 (Pa. Super. Ct. 1989)).  Under the economic loss doctrine, plaintiffs cannot recover economic losses in tort, when such losses flow from the breach of a contract.  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  Specifically, "no cause of action exists for negligence that results solely in economic damages unaccompanied

_____

to this case, and not its availability as a defense in general.

by physical injury or property damage." *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003).

In Count IV, plaintiff advances a negligence claim, alleging that defendants were "negligent, careless, wanton and/or reckless in their individual and collective *failure to cooperate and support*" plaintiff's O-1 application. (Compl. ¶ 23.) To establish a cause of action for negligence, "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998) (citing *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. 1993)). The duty on which plaintiff bases his negligence count is defendants' alleged duty to cooperate and support plaintiff's O-1 petition. (Compl. ¶ 23.) This duty, if existing at all, is "imposed by [a] mutual consensus agreement[]" not "by law as a matter of social policy." *Reardon*, 926 A.2d at 487. Count IV is therefore subject to dismissal under the gist of the action doctrine.

As plaintiff notes in his brief, many courts have been hesitant to dismiss tort claims at early stages of litigation under either the gist of action doctrine or the economic loss doctrine. *See, e.g.*, *Padalino v. Standard Fire Ins. Co.*, No. 08-01553, 2008 WL 4630585, *9-10 (E.D. Pa. Oct. 15, 2008); *M.H. Rydek Elecs., LLC v. Zober Indus., Inc.*, No. 07-3885, 2007 WL 3407130, *2-3 (E.D. Pa. Nov. 15, 2007); *Gemini Bakery Equip. v. Baktek*, No. 3204, 2005 WL 957635, *3 (Pa. Ct. Com. Pl. April 11, 2005). Other courts, however, have not hesitated to dismiss a tort claim when the claimed duty clearly arises, if at all, under an agreement between the parties and not as a matter of social policy. *See Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F. Supp. 2d 578, 584 (E.D. Pa. 2004) (reasoning that court was "satisfied that any duty owed to Plaintiff . . .

16

flowed solely from contract"); *see also Grimm v. Washington Mut. Bank*, No. 08-0828, 2008 WL 2858377, *3 (E.D. Pa. July 22, 2008) (acknowledging caution in dismissing under gist of the action doctrine at early stages of litigation, but concluding that "it [was] patently evident" that claim arose from contract; *Hellings v. NVR, Inc.*, No. 06-3089, 2006 WL 3589042, *6 (E.D. Pa. Dec. 7, 2006) (holding negligence claim barred by gist of the action because claim clearly arose under contract). This case readily falls into the latter group of cases, as plaintiff has not pleaded facts to establish that a duty exists independent of the purported contract. In fact, outside of the purported contract, plaintiff offers no guidance concerning "from where this [alleged] duty arises." *Reardon*, 926 A.2d at 487. I am convinced that, based on the facts alleged in plaintiff's complaint, any duty defendants owed to plaintiff are contractual in nature. Plaintiff has not pleaded facts or prompted a reasonable inference to suggest that defendant, as a matter of law and social policy, is under a duty to cooperate and support the O-1 petition. Thus, I will grant defendants' motion with respect to Count IV.[12]

Conversely, I find that Count V, plaintiff's deceit claim, must survive this motion to dismiss because defendants have yet to admit the existence of a contract. Unlike the negligence count, if defendants successfully defend against the existence of the contract, plaintiff has pleaded facts to support the "'essential elements of a cause of action for fraud or deceit[, which] are a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon and damage as a proximal result.'" *The Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 929 (Pa. Super. Ct. 2004) (quoting *Wilson v. Donegal Mut. Ins.*

---

[12] Because the gist of the action doctrine bars plaintiff's negligence claim, I decline to consider whether the economic loss doctrine applies, and if applicable, whether the economic loss doctrine would also bar Count IV.

*Co.*, 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991)).  Accordingly, it is premature to dismiss Count

V at this stage pursuant to either the economic loss doctrine or gist of the action doctrine.  *See*

Fed. R. Civ. Pro. 8(e)(3).  Thus, I will deny defendants' motion with respect to Count V.

Defendants ask that I dismiss plaintiff's request for punitive damages.  Punitive damages

are available to a plaintiff in fraud and deceit cases.  *See Pittsburgh Live, Inc. v. Servov*, 615

A.2d 438, 442 (Pa. Super. Ct. 1992).  Because I will deny the motion to dismiss with respect to

the deceit claim, I will also deny defendants' motion as it relates to plaintiff's request for punitive

damages in Count V.  However, because punitive damages are not available for breach of

contract and promissory estoppel claims, I will strike plaintiff's request for punitive damages in

Counts I and III.  *See DiGregorio v. Keystone Health Plan East*, 840 A.2d 361, 370 (Pa. Super.

Ct. 2003); *cf. Crouse*, 745 A.2d at 610 (holding that promissory estoppel "sounds in contract

law").

## E.    Attorneys' Fees

Finally, defendants argue that plaintiff's request for attorneys' fees is insufficient as a

matter of law because plaintiff has not pleaded a proper basis for recovery of attorneys' fees.

Defendants contend that plaintiff cannot recover fees under the "American Rule" without

demonstrating an agreement or exception to the contrary.  Because plaintiff has not pleaded such

a basis, defendants ask the court to strike plaintiff's demand for attorneys' fees.  In his response,

plaintiff incorrectly construes defendants' argument as a request for attorneys' fees, and,

therefore, does not respond to defendants' argument.

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Pro. 12(f).  Although

motions to strike may "save time and resources by making it unnecessary to litigate claims that will not affect the outcome of the case, motions to strike generally are disfavored." *DeLa Cruz v. Piccari Press*, 521 F. Supp 2d 424, 428 (E.D. Pa. 2007). I exercise "considerable discretion" when addressing this motion. *Id.* (internal quotation omitted).

Pennsylvania courts have "consistently followed the general, American Rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. 1999). Plaintiff does not identify and the court has not found any statute, contractual provision or established exception that forms a basis for awarding attorneys' fees in this case. *See* 42 Pa. Cons. Stat. § 2503; *Jama Corp. v. Gupta*, 2008 WL 108671, *3 (M.D. Pa. Jan 4, 2008) (finding that contract did not call for award of attorneys' fees and holding that attorneys' fees were not recoverable accordingly); *Koffman v. Smith*, 682 A.2d 1282, 1292 (Pa. Super. Ct. 1996) (concluding that "there is no established exception which permits recovery of [attorneys'] fees in an action for fraud"); *Pittsburgh Live*, 615 A.2d at 441 (noting that fraud claim was not an exception to the American Rule). Thus, I will grant defendants' motion with respect to attorneys' fees.

## IV.   Conclusion

Finding that plaintiff's negligence claim is barred by the gist of the action doctrine, I will grant defendants' motion with respect to Count IV. Also, because plaintiff has not pleaded facts that establish a basis for the recovery of attorneys' fees, I will grant defendants' motion to strike plaintiff's request for attorneys' fees. I will also strike plaintiff's request for punitive damages in Counts I and III. Finally, as plaintiff concedes the dismissal of Count II, I will dismiss Count II

of plaintiff's complaint.  The balance of defendants' motion is denied.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                         |     |                |
|-------------------------|-----|----------------|
| ROGER WOODS,            | :   |                |
|   Plaintiff,  | :   |                |
|                         | :   | CIVIL ACTION   |
|   v.          | :   |                |
|                         | :   | NO. 08-02495   |
| ERA MED LLC, ET AL.,    | :   |                |
|   Defendants. | :   |                |
|                         | :   |                |
|                         | :   |                |
|                         | :   |                |

## Order

**AND NOW** this 21st day of January 2009, upon consideration of defendants' motion to dismiss and strike (Doc. No. 2), plaintiff's response thereto and defendants' reply, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss Count II is **GRANTED**.  Count II is **DISMISSED** with prejudice.

2. Defendants' motion to dismiss Count IV is **GRANTED**.  Count IV is **DISMISSED**.

3. Defendants' motion to strike plaintiff's request for attorneys' fees is **GRANTED**, and plaintiff's request for attorneys' fees is **STRICKEN**.

4. Plaintiff's request for punitive damages in Counts I and III is **STRICKEN**.

5. The balance of defendants' motion is **DENIED**.

<u>s/ William H. Yohn Jr., Judge</u>
William H. Yohn Jr., Judge